Edward L. COOK, Petitioner,

v.

Anthony LAMARQUE, Respondent.

No. CV–F–99–6334 REC/SMS P.

United States District Court,
E.D. California.

Dec. 20, 2002.

Stephen Michael Greenberg, Nevada City, CA, for petitioner.

Robert R. Anderson, Attorney General's Office for State of California, Sacramento, CA, for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF JUDGMENT FOR RESPONDENT

COYLE, Senior District Judge.

On October 7, 2002, the United States Magistrate Judge recommended that the court deny petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

On November 7, 2002, petitioner timely filed objections to the recommendation.

The court has reviewed the record herein de novo and concurs with the recommendation.

ACCORDINGLY, IT IS ORDERED that petitioner's petition for writ of habeas corpus is denied.

## JUDGMENT FOR RESPONDENT TO BE ENTERED

## FINDINGS AND RECOMMENDATION

### RE: PETITION FOR WRIT OF HABEAS CORPUS

#### (Document No. 1)

BEST, United States Magistrate Judge.

Petitioner is a state prisoner, represented by Stephen Greenberg, Esq., proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72–302, this action was referred to the undersigned by order dated July 30, 2002.

## PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections serving a sentence of life without the possibility of parole pursuant to a judgment of the Superior Court of California, County of Kern, entered on September 19, 1995, following his conviction after trial by jury of murder during the commission of a robbery, and robbery. Petitioner was also found to have used a deadly weapon in the commission of the crimes.

The California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"), affirmed the judgment in a partially published opinion filed on March 9, 1998. On April 7, 1998, the 5th DCA denied a rehearing.

Petitioner filed a petition for review with the California Supreme Court which was summarily denied on June 17, 1998.

Petitioner did not seek collateral relief in the state court.

The instant petition, filed in this court on September 13, 1999, alleges five claims; (1) Admission of a key witness's coerced

testimony violated Petitioner's due process right to a fair trial; (2) Failure to instruct the jury as to the mens rea necessary to establish Petitioner's culpability as an aider and abettor in the robbery and robbery-murder, violated Petitioner's rights to jury trial and due process; (3) The 5th DCA's reliance on a previously unannounced rule to reject Ground 2 lessened the State's burden of proof and violated Petitioner's right to due process; (4) Ineffective assistance of trial counsel; and (5) Instructing the jury with the 1994 revision of CALJIC No. 2.90 defining "reasonable doubt," violated due process.

Respondent's answer, filed on December 10, 1999, contends Ground 3 is unexhausted but concedes that Petitioner has exhausted his state court remedies as to the other claims.

Petitioner's traverse was filed on May 1, 2000.

## FACTUAL BACKGROUND

The Court hereby adopts the facts as summarized by the 5th DCA:

In the evening of August 21, 1994, defendant, then 16 years old, asked his friend Adolph if he was "down for a 187." Adolph apparently thought a "187" was a robbery. The boys went out to the railroad tracks that ran behind the house where defendant was living. A frequently traveled dirt path ran alongside the tracks. The boys saw Donald Thornton, whom they did not know, walking along the path carrying a shopping bag. Defendant said, "Well you wanna get him?" Adolph said, "I don't care." The boys approached Thornton.

Defendant confronted Thornton using the command "break yourself" or "brake yourself." Adolph thought this meant "give up your stuff." Thornton began to retreat and then dropped his bag. Adolph picked up the bag, which contained three or four cans of beer. Adolph began to leave with the beer. Around seven feet away, Adolph turned and saw defendant's fist slamming into Thornton's side three or four times; he saw nothing in defendant's hand. Adolph turned away again. Seconds later, defendant caught up with Adolph. Laughing, defendant said he had stabbed the man. Adolph saw defendant was holding a pocketknife. The boys went back to defendant's house and drank the beer.

The next day, Adolph told his brother Marcus about the killing, saying "we did something stupid." Later that day, defendant told Marcus "he had stabbed some guy on the tracks late at night that night before."

Two days later, defendant told his girlfriend, Misty, about the killing. He said he and "his homies" stabbed the man for a six-pack of beer. The next day, defendant told Misty additional details. On August 26, 1994, Misty secretly called the police. Misty obtained further details from defendant. Defendant said he had stabbed the man and that only Adolph had been with him. He also said he had taken $200 from the man, that they had worn ski masks as a disguise, and that he previously had killed people in Los Angeles, none of which apparently were true.

Three weeks later, detectives picked up Adolph for questioning. Adolph first claimed he did not know what the detectives were talking about. After they told him they knew defendant had killed Thornton and that Adolph was equally as likely as defendant to be convicted of first degree murder unless he cooperated, Adolph confessed. He described defendant's role in the robbery and murder essentially as set forth above.

The detectives then questioned defendant, who stated he and Adolph had been home all evening. He persisted in this claim even when the detectives told him about Adolph's confession. "You have my story; I have my witnesses," defendant repeatedly proclaimed. The detectives arrested defendant.

*See* pp. 2–3, Exhibit "D," Respondent's Answer, Slip Opinion of the 5th DCA (hereinafter "Slip Opinion").

## DISCUSSION

*I. Legal Standard of Review.*

■ The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. *Van Tran v. Lindsey,* 212 F.3d 1143, 1148 (9th Cir. 2000). A state court's decision denying relief may be reversed only if that decision is "contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." *Id.,* at 1149 (*quoting* 28 U.S.C. § 2254(d)(1)). The distinction between the "contrary to" and "unreasonable application of" provisions of § 2254(d)(1) were noted in *Williams v. Taylor,* 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and summarized by the Ninth Circuit in *Van Tran v. Lindsey:*

A state court's decision can be "contrary to" federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. A state court's decision can involve an "unreasonable application" of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. (internal citation omitted).

212 F.3d at 1150. In *Jeffries v. Wood,* 114 F.3d 1484 (9th Cir.1997), the Ninth Circuit Court of Appeals, sitting en banc, noted the effect of the AEDPA:

Under the amendments to Chapter 153, federal courts must restrict their legal analysis to whether the state decision was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Act further restricts the scope of federal review of mixed questions of law and fact. 28 U.S.C. § 2254(e). De novo review is no longer appropriate; deference to the state court factual findings is.

114 F.3d at 1498. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle,* 94 F.3d 1321, 1325 (9th Cir.1996).

Furthermore, with the exception of Ground 3, each of the claims asserted in the instant petition were rejected on the merits by the 5th DCA in its opinion filed on March 9, 1998. The California Supreme Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied the claims presented on their merits for the same reasons as stated in the opinion of the 5th DCA. "In this circumstance, we 'look through' the unexplained California Supreme Court decision to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment." *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000); see also *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct.

2590, 115 L.Ed.2d 706 (1991); *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir.1999).

## II. Review of Petitioner's Claims.

### Ground One: Whether admission of a key witness's coerced testimony violated Petitioner's due process right to a fair trial.

Petitioner claims the admission of Adolph Nava's "coerced testimony" violated Petitioner's due process right to a fair trial. Petitioner points to Adolph's testimony at trial under both direct and cross-examination in attempting to establish that his testimony was coerced. Petitioner argues Adolph was still under coercion from his initial police interview at the time he testified at trial.

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, [citation omitted,] and even though there is ample evidence aside from the confession to support the conviction." [Citation omitted.] *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). "In determining whether a defendant's will was overborne in a particular case, the Court assesse[s] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In this case, after carefully reviewing Adolph's testimony, the 5th DCA stated:

We conclude that Adolph's trial testimony, taken as a whole, does not convey that he thought he had to testify at trial in accordance with his previous statements even if the previous statements were untrue. [Citation omitted.] The testimony was not involuntary.

Slip Opinion, p. 14.

At trial, Adolph testified that as part of his plea bargain, he was told to tell the truth. RT 130 ("They told me to just tell them the truth, what I did and what he did."). Adolph testified that his confession to the investigating detectives was the truth and that his testimony in court was the truth. RT 130–131, 142. When Adolph was asked whether the detectives told him what to say or "put words in [his] mouth," Adolph stated, "No." RT 141–142.

On cross-examination, Adolph admitted that he told the detectives that Petitioner committed the crime only after the detectives informed him that he could be charged with murder. RT 152. Adolph testified that the detectives advised him that he had two options: one, to be charged with murder; or two, to become a witness. RT 158–159.

On re-direct, Adolph admitted that no officer or attorney had coached him or told him what to say in court. RT 200. Adolph also acknowledged that he wasn't threatened with being charged with murder, but that he was actually charged. RT 207. In addition, Adolph stated that his agreement to testify in court was made at the time he went to court. RT 207. Adolph also admitted that he would never make up a story and lie about Petitioner to avoid going to prison. RT 208. Again, Adolph acknowledged that his testimony was the truth. RT 208, 216. Adolph conceded that he had been tricked into telling the truth. RT 208.

On re-cross, Adolph admitted that the detectives threatened him with being charged with murder unless he became a witness. RT 218. Adolph stated he didn't want to take the fall for Petitioner's actions. RT 219. On further re-direct, Adolph stated he had accepted responsibil-

ity for the robbery, and he felt Petitioner should accept responsibility for his actions. RT 223. On further re-cross, Adolph stated he told the truth because his conscience bothered him, not because he was threatened. RT 224–225.

■ Upon reviewing all of the circumstances surrounding Adolph's confession and subsequent testimony at trial, this Court cannot say that Adolph's testimony was involuntary or coerced. Although Petitioner disagrees with the state court decision in this regard, he has not demonstrated that the decision is contrary to, or an unreasonable application of United States Supreme Court precedent.

**Ground Two: Whether the failure to instruct the jury as to the mens rea necessary to establish Petitioner's culpability as an aider and abettor in the robbery and robbery-murder violated Petitioner's rights to jury trial and due process.**

Petitioner next claims the trial court erred by failing to instruct the jury on the mens rea element necessary to establish Petitioner's culpability for the crime of robbery and robbery-murder as an aider and abettor. Petitioner alleges the jury must have convicted Petitioner of robbery and robbery-murder as an aider and abettor because no evidence was submitted that Petitioner actually took anything from the victim. However, because the jury was not instructed on the mens rea element of aiding and abetting, Petitioner was allegedly convicted without a jury finding on every element of the offense.

In rejecting this claim, the 5th DCA found the aiding and abetting instructions unnecessary. The 5th DCA found Petitioner to be a direct perpetrator of the robbery. Based on the 5th DCA's interpretation of common law and prior Califor-

nia decisions, the 5th DCA concluded that "one who engages in conduct that is an element of the charged crime is a perpetrator, not an aider and abettor, of the completed crime." See p. 17, Slip Opinion. Therefore, "if the defendant performed an element of the offense, the jury need not be instructed on aiding and abetting, even if an accomplice performed other acts that completed the crime." *Id.* at 18.

Respondent first argues that the claim is not cognizable on federal habeas review, because the claim pertains to state law and does not implicate the Constitution, laws or treaties of the United States. Respondent then argues that the claim should be denied on the merits, relying on the disposition of the claim by the 5th DCA. Respondent contends that the jury found every element of the offense of robbery as to defendant; therefore, aiding and abetting instructions were unnecessary.

Petitioner argues that both Respondent and the 5th DCA have mischaracterized Petitioner's claim. According to Petitioner, a violation of the Constitution occurred when the trial court *actually instructed* the jury on aider and abettor liability but omitted the mens rea element. Because of this omission, Petitioner argues, the jury was provided no guidance. The result, according to Petitioner, is that the jury found Petitioner guilty of robbery based on an aiding and abetting theory, because Petitioner allegedly only assisted Adolph in committing the robbery, but the jury made no finding regarding Petitioner's actual intent or knowledge. The Court is persuaded that the 5th DCA mischaracterized Petitioner's claim; thus, the 5th DCA's opinion is not entitled to deference. *See* Ground Three, discussed *infra.* This Court must conduct a de novo review of this claim. *See Delgado v. Lewis,* 181 F.3d 1087, 1091 (9th Cir.1999).

■ This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); 28 U.S.C. § 2241. Under the Constitution, "every fact necessary to constitute the crime with which [a defendant] is charged" must be proved "beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It necessarily follows that constitutional trial error occurs when a jury makes a guilty determination on a charged offense without a finding as to each element of the offense. According to the Supreme Court, a jury instruction that omits an element of the offense constitutes such an error. *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). However, such an error "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S.Ct. 1827. Provided that such an error occurred, Petitioner's conviction can only be set aside if the error was not harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Neder*, 527 U.S. at 15, 119 S.Ct. 1827. Under the Chapman harmless error test, it must be determined "beyond a reasonable doubt" whether "the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24, 87 S.Ct. 824.

In the instant case, the trial court instructed the jury with CALJIC 9.40, the state instruction on robbery:

> [Defendant is accused [in Count 2 of] the information of having committed the crime of robbery, a violation of section 211 of the Penal Code.]
>
> Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive that person of the property, is guilty of the crime of robbery in violation of Penal Code Section 211.
>
> In order to prove this crime, each of the following elements must be proved:
>
> 1. A person had possession of property of some value however slight;
>
> 2. Such property was taken from such person or from [his] immediate presence;
>
> 3. Such property was taken against the will of such person;
>
> 4. The taking was accomplished either by force, violence, fear or intimidation; and
>
> 5. Such property was taken with the specific intent permanently to deprive such person of the property.

CT 167–168. In addition, the trial court instructed the jury with CALJIC 3.00, the state instruction defining principals:

> The persons concerned in the [commission] of a crime who are regarded by law as principals in the crime thus [committed] and equally guilty thereof include:
>
> 1. Those who directly and actively [commit] the act constituting the crime, or
>
> 2. Those who aid and abet the [commission] of the crime.

CT 137. However, the jury was not instructed on the elements of aiding and abetting, contained in CALJIC 3.01:

> A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she,
>
> 1. With knowledge of the unlawful purpose of the perpetrator and

2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and

3. By act or advice aids, promotes, encourages or instigates the commission of the crime.

[A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be present at the scene of the crime.]

[Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]

[Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]

██ Petitioner argues that the jury may have arrived at a guilty finding on the robbery and robbery-murder charges based on the portion of CALJIC 3.00 defining an aider or abettor as a principal. Petitioner argues that the addition of this language may have caused confusion for the jury as to the necessary elements of the crimes. This argument is unpersuasive for several reasons. First, the trial court also instructed the jury with CALJIC 3.10 and CALJIC 3.16. CALJIC 3.10 defined an accomplice as "a person who is subject to prosecution for the identical offense charged against the defendant on trial by reason of aiding and abetting." CT 138 (parentheticals omitted). CALJIC 3.16 stated that "[i]f the crime of murder or robbery was committed by anyone, the witness Adolph Nava was an accomplice as a matter of law and his testimony is subject to the rule of corroboration." CT 141 (parentheticals omitted). These instructions would have aided the jury in resolving any confusion by removing Petitioner from consideration as an aider and abettor.

In addition, the jury was instructed with CALJIC 9.40 on the necessary elements of robbery. No confusion exists in this in- struction, and any confusion caused by CALJIC 3.00 would have been further alleviated in the reading of this instruction. The language in CALJIC 9.40 requires a specific finding that the defendant in fact took the property ("Every person who takes personal property in the possession of another ... is guilty of the crime of robbery"). CT 167.

In addition, the court instructed the jury with CALJIC 8.80.1 regarding the special circumstance of murder committed during a robbery. Specifically, the jury was instructed that if it found the defendant guilty of murder in the first degree, it must determine if the following special circumstance was true: whether "the murder occurred while defendant was committing a robbery." CT 155. To make such a finding, the jury was instructed that it must be proved that "the murder was committed while the defendant was engaged in the commission of a robbery." CALJIC 8.81.17. *See* CT 158 (parentheticals omitted). Again, a specific finding that the defendant committed a robbery was required.

When the aiding and abetting language contained in CALJIC 3.00 is viewed in light of these other instructions, it cannot be said that the jury was confused as to the necessary elements of robbery or robbery-murder. Any confusion that might have been caused by the inclusion of the aiding and abetting language was remedied by the other instructions. Therefore, the trial court's failure to instruct on all elements of aider and abettor liability was not constitutional trial error.

██ Furthermore, even if the omission of the mens rea element of aiding and abetting was constitutional trial error, it was harmless beyond a reasonable doubt. In returning a guilty verdict on the robbery charge, the jury necessarily found that Petitioner had the specific intent to

deprive the victim of his property. CALJIC 9.40 requires a finding that the defendant have "the specific intent permanently to deprive [the victim] of the property." CT 167. In returning a true finding that the murder was perpetrated during the commission of a robbery, the jury necessarily found Petitioner had the specific intent to steal. Modified Special Instruction No. B, as instructed by the trial court, reads: "If a defendant's intention is not to steal, but to kill, and defendant or another principal in the crime decides after the commission of the killing to rob, the robbery is not the special circumstance of 'murder during the commission of robbery.' " CT 159. Defense counsel further addressed the robbery charge in closing arguments, stating:

> And I want you to remember that with regard to every element of every crime, every element must be proved beyond a reasonable doubt. And that means that the intent to rob must be proven beyond all doubt based on reason.

RT 687.

The jury's determinations that Petitioner was guilty of the special circumstance of murder during the commission of a robbery, and robbery, shows that it necessarily determined that Petitioner had the specific intent to rob the victim. This is equivalent to finding the omitted "intent or purpose of committing or encouraging or facilitating the commission of the crime" element of aiding and abetting. CALJIC 3.01. In *Tapia v. Roe*, the Ninth Circuit held that in such circumstances, where the jury has made a separate determination as to the specific intent to the underlying offense, the omission of the intent element from an aiding and abetting instruction would not have "an injurious effect or influence in determining the verdict," and is "harmless beyond a reasonable doubt." 189 F.3d 1052, 1056–57, *quoting Brecht v.*

*Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), and *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. Likewise, in this case, any error in omission of the intent element was harmless beyond a reasonable doubt, because the jury found Petitioner had the specific intent to rob the victim.

In Petitioner's traverse, Petitioner complains that such a result requires reversal under due process principles because such a verdict is not supported by the evidence. Put another way, Petitioner argues that if the jury found Petitioner guilty of every element of the offense of robbery, the verdict must be overturned because there is insufficient evidence to support such a verdict. Petitioner points to a lack of evidence supporting the taking of property from the victim by the Petitioner. However, this insufficiency of the evidence claim was not presented in the instant petition. Therefore, this issue is not properly before this Court. *See Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.") Furthermore, the claim has not been presented to the California Supreme Court and is therefore unexhausted. *See Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (A petitioner must provide the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.)

Therefore, the instant claim is without merit and must be denied.

**Ground Three:** **Whether the 5th DCA's reliance on a previously unannounced rule to reject Ground 2 lessened the State's burden of proof and violated Petitioner's right to due process.**

Petitioner next claims his due process rights were violated when the 5th DCA

relied on a previously unannounced rule in rejecting the second ground for relief. The rule, as announced by·the 5th DCA, holds that "one who engages in conduct that is an element of the charged crime is a perpetrator, not an aider and abettor, of the completed crime." *People v. Cook*, 61 Cal.App.4th 1364, 1371, 72 Cal.Rptr.2d 183 (1998). Petitioner argues that this new rule, being previously unannounced, should not have been applied to Petitioner. In addition, Petitioner claims the application of this new rule lessened the State's burden of proof by removing other elements as to the defendant.

Respondent contends the claim is unexhausted. In addition, Respondent argues the claim should be denied on the merits, because the application of this new rule did not constitute an Ex Post Facto violation and was a consistent application of state law.

Respondent's contention that this ground is unexhausted is first addressed. It is true that this claim was not raised in Petitioner's direct appeal. However, in his direct appeal to the 5th DCA, Petitioner did contend "[t]he trial court failed to instruct ... [on] the mens rea necessary to establish appellant's culpability as an aider and abettor in the robbery and robbery-murder." Slip Opinion, p. 14. In his reply brief, Petitioner claimed, "Where the prosecution's theory of the robbery count was that a key element was performed by an accomplice, the jury must be instructed on aiding and abetting." *Id.*

Answering the contention, the 5th DCA stated:

Defendant cites no authority for the proposition that when a "key element" of a crime is performed by another person, any accomplice is merely an aider and abettor. Although we have found no California case discussing this issue in any detail, we conclude defendant is

wrong and that the evidence at trial clearly showed that defendant was guilty, if at all, as a direct perpetrator of the robbery.

Slip Opinion, p. 14.

In his petition for review filed· with the California Supreme Court, Petitioner presented as Issue II:

Where (a) an offense consists of more than one act (e.g., the assault and theft aspects of robbery); (b) according to substantial evidence and the prosecutor's theory of the case, each act was performed by a different person; and (c) the jury is instructed on the basic principle of aiding and abetting liability (CALJIC No. 3.00); does the trial court commit·federal constitutional error in failing to give any instruction defining the elements of aiding and abetting (CALJIC No. 3.01), requiring reversal per se? In the alternative, is defense counsel constitutionally ineffective in failing to request such an instruction?

Exhibit G, Respondent's Answer.

By its "silent" denial, the California Supreme Court is presumed to have denied the above issue on the merits and, thus, it would appear that petitioner has exhausted his state court remedies as to this ground.

As stated above, "every fact necessary to constitute the crime with which [a defendant] is charged" must be proved "beyond a reasonable doubt." *In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068. "The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements." *Sullivan v. Louisiana*, 508 U.S. 275, 278–279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citations omitted).

In rejecting Ground Two, the 5th DCA relied on a previously unannounced rule:

[O]ne who engages in conduct that is an element of the charged crime is a perpetrator, not an aider and abettor, of the completed crime. Thus, appellant's proposed formulation of the rule, if 'a key element was performed by an accomplice, the jury must be instructed on aiding and abetting,' is essentially the reverse of the correct rule: If the defendant performed an element of the offense, the jury need not be instructed on aiding and abetting, even if an accomplice performed other acts that completed the crime.

Slip Opinion, p. 17–18.

■■■ Petitioner correctly argues that the rule expressed in *Cook* is unconstitutional. Due process requires that all elements of the offense be proven against the defendant. However, the *Cook* rule allows the prosecution to prove an offense by establishing only one element as to a particular defendant, effectively removing the necessity of proving all required elements and thereby lessening the burden of proof. Pursuant to the *Cook* rule, if a crime is completed, then the prosecution need only prove that a defendant committed one element in order for the defendant to be found guilty of the entire crime, so long as another actor committed the remaining elements. Under *Cook*, in such a case, aiding instructions are unnecessary.

The constitutional deficiencies of this rule can be demonstrated by a simple hypothetical example. Consider two individuals who decide to frighten another individual. As part of the plan, one actor is to utilize a toy gun in a confrontation with the victim. Now, let us suppose the other actor decides he in fact wants to kill the victim, and he replaces the toy gun, unbeknownst to the first actor, with a real gun. When the first actor, thinking he is using a toy gun, pulls the trigger and kills the victim, is he guilty of murder? Under the *Cook* rule, the answer is in the affirmative. Pursuant to Cal.Penal Code § 187, murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." Applying the *Cook* rule, the first actor is guilty of murder even though he did not bear malice aforethought, because the crime was completed, he committed an unlawful killing, and the element of malice was completed by the other actor. This result is clearly unconstitutional, but it is entirely possible under the new rule announced in *Cook*.

Although Petitioner is correct and the rule formulated by the 5th DCA is contrary to federal law, the remedy for this claim is not relief in the form of a reversal of the conviction. This claim only affects the Court's resolution of Ground Two. As argued by Petitioner, the 5th DCA mischaracterized Ground Two, finding that aiding instructions were unnecessary when Petitioner's true claim was that error occurred when the trial court *actually instructed* the jury on aider and abettor liability but omitted the mens rea element. Because the 5th DCA failed to address Petitioner's true claim, the decision is not entitled to deference. *See Appel v. Horn*, 250 F.3d 203, 210–211 (3d Cir.2001) (the state court's misconstrual of the petitioner's claim prevented the state court from fully resolving the actual claim and therefore "deferential standards provided by AEDPA and explained in *Williams* do not apply ... [and] federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact"). Therefore, the remedy in this claim is a review of Ground Two without deference to the state court decision.

### Ground Four: Whether Petitioner was deprived of effective assistance of trial counsel.

Petitioner alleges he was deprived of effective assistance of counsel for trial

counsel's failure to request adequate jury instructions. Petitioner complains that trial counsel failed to request jury instructions defining the elements of aiding and abetting, failed to object to the instruction given on the robbery-murder special circumstance, and failed to request jury instructions describing Petitioner's burden with respect to third party evidence.

In order to succeed on an ineffective assistance of counsel claim, a petitioner must first demonstrate that counsel's performance was deficient, that is, the performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must show counsel's performance fell outside a "wide range of reasonableness." *Weighall v. Middle,* 215 F.3d 1058, 1063 (9th Cir. 2000). "There is a strong presumption that counsel's conduct falls within [this] wide range of reasonable professional assistance . . . ." *Downs v. Hoyt,* 232 F.3d 1031, 1038 (9th Cir.2000). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Guam v. Santos,* 741 F.2d 1167, 1169 (9th Cir.1984) (a "tactical decision by counsel with which the [petitioner] disagrees cannot form the basis of a claim of ineffective assistance of counsel"). Second, even if the petitioner can establish that counsel's performance was constitutionally deficient, he still must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. 2052. It is not necessary to evaluate both prongs of the *Strickland* test if the petitioner fails to establish one. *Pollard*

*v. White,* 119 F.3d 1430, 1435 (9th Cir. 1997).

In rejecting Petitioner's claim of ineffective assistance of counsel with regard to counsel's failure to request jury instructions on the elements of aiding and abetting theory, the California Court of Appeal, applying the *Strickland* principles set forth above, found no error or prejudice in counsel's failure because aiding and abetting instructions were unnecessary. This Court agrees that counsel's failure to request additional instructions on aiding and abetting was not prejudicial. As discussed in Ground Two, *infra,* the jury was fully instructed on the elements of the offenses. While instructions on the elements of aiding and abetting may have further assisted the jury, the outcome of the proceeding would have been the same.

Petitioner next claims that counsel erred by failing to object to the instruction given on the robbery-murder special circumstance. The instruction at issue is as follows:

> If a defendant's intention is not to steal but to kill and the defendant or another principal in the case decides after the commencement of killing to rob, the robbery is not the special circumstance of murder in the commission of the robbery.

(RT 542.) Petitioner argues that defense counsel should have objected, because the instruction as given failed to address the state of the evidence. Specifically, as stated by the 5th DCA and Respondent, the instruction did not address any scenario suggested by the evidence, because there was no evidence that Petitioner or Adolph decided to rob the victim after Petitioner began stabbing the victim.

In rejecting this claim, the 5th DCA found no prejudice, stating:

> Defendant next argues that counsel was ineffective for failing to cause the court

to correct the court's revision of defendant's requested pinpoint instruction. As defendant notes, the modified instruction did not really address any scenario suggested by the evidence. [Footnote omitted]. Nevertheless, as we have seen in section III, above, the jury was fully instructed on the law as it applied to the various scenarios that *were* suggested by the evidence. The jury was also instructed to ignore instructions inapplicable to the facts found by the jury. (CALJIC No. 17.31.) Under these circumstances, counsel's failure to request correction of the court's modified instruction was not prejudicial. (*Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. 2052.)

Slip Opinion, pp. 23–24.

■ This Court agrees that counsel's failure to object to the modified instruction was not prejudicial to the outcome of the case. The defense theory that Petitioner did not attempt to rob the victim but to kill him, while Adolph may have intended only to rob the victim, was supported by the other instructions provided. Specifically, the jury was instructed that if it found the defendant guilty of murder in the first degree, it must determine whether "the murder occurred while defendant was committing a robbery." CT 155. To make such a finding, the jury was instructed that it must be proved that "the murder was committed while the defendant was engaged in the commission of a robbery." CALJIC 8.81.17. *See* CT 158 (parentheticals omitted). The jury was also instructed with CALJIC 9.40 on the elements of robbery. Thus, the defense theory was supported. In order to make these findings, the jury must have found that defendant was engaged in the commission of a robbery, and all elements of robbery were satisfied as to defendant. Defense counsel's failure to object to the modified in-

struction is therefore non-prejudicial. The outcome of the case would have been the same.

Petitioner also claims that defense counsel committed error in failing to request jury instructions describing Petitioner's burden with respect to third party evidence. Petitioner complains that the jury may have misunderstood that Petitioner's burden with respect to evidence that a third party committed the crime was only to raise a reasonable doubt as to Petitioner's guilt, and not to prove that a third party committed the crime beyond a reasonable doubt. Petitioner faults defense counsel for failing to request an instruction in addition to California's pattern instruction on reasonable doubt (CALJIC 2.90).

The 5th DCA found no error and no prejudice, stating:

Defendant first argues counsel was ineffective for failing to request a pinpoint instruction on evidence of third-party culpability. According to defendant, the instruction should have told the jury third-party evidence need not prove that another person committed the crime in order to require acquittal. Our Supreme Court, as noted previously in this opinion, has held that CALJIC No. 2.90 adequately conveys this rule to the jury. (*People v. Wright, supra,* 45 Cal.3d at p. 1134, 248 Cal.Rptr. 600, 755 P.2d 1049 ["Defendant also notes [his proposed instruction] would tell the jury he need not proved his innocence or another's guilt; but the court stated this rule in CALJIC No. 2.90 . . . ."].) The jury was instructed with CALJIC No. 2.90. Given the Supreme Court's view of the effect of this instruction, it is difficult to find fault with counsel's apparent decision that no further instruction on the matter was necessary.

In any event, as we discussed in the context of the admissibility of the ex-

cluded third-party evidence, the overall force of that evidence was very weak. The only potential direct link between Thornton and Valdez was the wet clothes Valdez carried. The force of this evidence was almost wholly undermined by the defense admission that the defense had failed to perform available tests on the clothing to determine the presence of blood. All of the other evidence was merely motive evidence. Under the circumstances, the omission of an instruction directly tying the third-party evidence to the prosecution's burden of proof does not undermine our confidence in the verdict. (*Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. 2052.)

Slip Opinion, pp. 22–23.

■ The 5th DCA correctly applied the *Strickland* test. Counsel's decision not to request further instruction was not unreasonable and was not prejudicial. In this argument as well as his two other arguments of ineffective assistance of counsel, Petitioner fails to establish that the decision of the state court was contrary to or involved an unreasonable application of United States Supreme Court precedent. The claim must be denied.

**Ground Five:** **Whether the trial court's instruction of the jury with the 1994 revision of CALJIC No. 2.90 defining "reasonable doubt" violated due process.**

In his traverse to Respondent's answer, Petitioner concedes his constitutional challenge to California's pattern jury instruction on reasonable doubt (CALJIC 2.90). This Court is bound by the Ninth Circuit's decision in *Lisenbee v. Henry,* 166 F.3d 997 (9th Cir.1999), which upheld the adequacy of CALJIC 2.90 under constitutional standards.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED with prejudice. In the event the District Court adopts this Findings and Recommendation, the Court recommends that the opinion be published.

This Findings and Recommendation is submitted to the Honorable Robert E. Coyle, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636(b)(1)(B) and Rule 72–304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

Oct. 7, 2002.