Filed 6/12/13 (unmodified opinion attached)

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
Plaintiff and Respondent, )  S192704
)
v. )  Ct.App. 2/1 B220174
)
MILDRED DELGADO, )  Los Angeles County
)  Super. Ct. Nos.
Defendant and Appellant. )  BA337662/BA348502
_____ )

## ORDER MODIFYING OPINION AND
## DENYING PETITION FOR REHEARING

THE COURT:

The majority opinion in this matter, filed on April 4, 2013, and appearing at 56 Cal.4th 480, is modified as follows:

On page 486, footnote 2 is modified to read in its entirety:

Conspirators bear a similar derivative liability for the criminal acts of their coconspirators, whether the conspiracy itself is charged or uncharged. (*People v. Valdez* (2012) 55 Cal.4th 82, 150; *People v. Pulido* (1997) 15 Cal.4th 713, 724.) Defendant also contends the trial court was obliged to instruct sua sponte on an uncharged conspiracy. Because that claim was not raised in defendant's petition for review, and is beyond the scope of the issues we directed the parties to brief, we do not address it. (See Cal. Rules of Court, rule 8.516(a)(1), (b); *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682, fn. 5.)

This modification does not affect the judgment.

The petition for rehearing is denied.

Filed 4/4/13 (unmodified opinion)

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | S192704 |
| | ) | |
| v. | ) | Ct.App. 2/1 B220174 |
| | ) | |
| MILDRED DELGADO, | ) | Los Angeles County |
| | ) | Super. Ct. Nos. |
| Defendant and Appellant. | ) | BA337662/BA348502 |
| _____ | ) | |

Defendant Mildred Delgado was convicted of robbery (Pen. Code, § 211)[1] and kidnapping for purposes of robbery (§ 209, subd. (b)(1)), on evidence from which a jury could have determined an accomplice, rather than defendant, personally performed the act of asportation necessary to the offense of kidnapping. He contends the trial court erred in failing to instruct, sua sponte, on the law of accomplice liability. We conclude the court was required to instruct on aiding and abetting liability as a general legal principle raised by the evidence and necessary for the jury's understanding of the case. (*People v. Prettyman* (1996) 14 Cal.4th 248, 265.)

We also conclude the error was harmless. The jury was fully instructed on the elements of kidnapping for robbery, including asportation, and found those elements proven beyond a reasonable doubt. Instructions on the liability of an

---

[1] All further statutory references are to the Penal Code.

aider and abettor would merely have provided additional theories of defendant's liability; their absence could not have prejudiced defendant. Moreover, the circumstantial evidence defendant was working with the apparent accomplice to kidnap and rob the victim was strong. No reasonable probability (*People v. Watson* (1956) 46 Cal.2d 818, 836) exists of a more favorable outcome had accomplice liability instructions been given.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with kidnapping Melvin Perez to commit robbery (§ 209, subd. (b)(1)) and with robbing Perez (§ 211), as well as with the unrelated robbery and assault of a different victim.

Perez testified that on the evening of March 1, 2008, after drinking around six beers at home, he went to El Charo bar in Los Angeles. On the way, he encountered and talked briefly with defendant, who followed him into El Charo, where Perez treated him to a beer and the two drank together. Defendant suggested Perez come with him to a friend's house to get some money or drugs, but Perez declined. Defendant left; Perez stayed and continued drinking, having a total of eight beers at the bar. At some point, a woman who had seen defendant staring at Perez telephoned Perez's cousin, who lived with Perez. The cousin came to the bar and offered to drive Perez home. Perez stayed but, at his cousin's request, gave him the jewelry he was wearing (chains, a bracelet, a ring, and a watch) for safekeeping.

Defendant returned some hours later, as the bar closed and Perez left. Defendant was standing by a car near the entrance; a woman was in the driver's seat. Defendant asked Perez if he wanted a ride and, when Perez declined, grabbed Perez by the shoulder and ushered him into the backseat, saying, "Come on, let's go in." Perez agreed to go because he was drunk. Defendant got into the

2

front passenger seat and the car drove a few blocks, then stopped. Defendant climbed into the backseat with Perez.

Perez asked what was going on, and defendant told him to shut up. Perez tried to get out of the car, but the driver locked the door from the front seat. Defendant started searching Perez's pockets, asking him about his jewelry. Perez said he did not have it, that someone had already robbed him. Defendant displayed a knife. As the two struggled in the backseat, the car began moving again. Defendant took Perez's wallet, with $100 or $150 in it, from his pants pocket and stabbed Perez in the ribs and on his forehead. Perez felt himself being pushed and lost consciousness. When he woke up, he was near his apartment building. People on the street saw he was bloody and called for help.

About 10 days later, Perez saw defendant on the street and, after calling the police, asked, "Hey, you're the guy who robbed me, huh?" Defendant responded, "Yeah, so what." The police arrived and arrested defendant. Defendant admitted to police he had gotten Perez into the car, which a woman was driving, in order to rob him. He stabbed Perez only after Perez hit him in the face. The detectives later inspected an Isuzu Trooper registered to Myra Gonzalez at a Los Angeles address near the crime scene, which bore bloodstains on a rear interior door panel. Written on a calendar in the vehicle was the notation "Myra and Mildred." (Mildred is defendant's first name.)

Testifying in his own behalf, defendant said he returned to El Charo around closing time because Perez and he had agreed to go back to Perez's home to drink more beer. He saw a woman he knew as Myra, who ran an informal taxi service, in a car outside the bar. As Perez left the bar, he got into the backseat of the car; defendant then followed by getting in the front. They were heading for an address Perez had given the woman when Perez made an insulting remark to defendant. Defendant got in the backseat and told Perez to calm down, but Perez hit him with

3

a beer bottle. Defendant pushed or hit Perez, whose forehead hit the corner of the door. Perez then injured his abdomen by pushing himself against the knife defendant was holding in his hand. Defendant never intended to rob Perez.

The jury was instructed that to prove defendant's guilt of kidnapping for the purpose of robbery, the People needed to prove defendant intended to commit robbery, "took, held, or detained another person" by use of force or fear, and "moved the other person or made the other person move a substantial distance" beyond that merely incidental to the commission of robbery. (See CALCRIM No. 1203.) No instructions on the complicity of an aider and abettor, such as those contained in CALCRIM Nos. 400-401, were requested or given.

The prosecutor's theory of kidnapping, as expressed in argument to the jury, was that defendant held or detained Perez by force or fear when he climbed into the backseat, displayed a knife, and struggled physically with him (the prosecutor disavowed any claim defendant initially forced Perez into the car). Defendant then "made Melvin Perez move a substantial distance" by keeping him from exiting the moving vehicle until he finished robbing him.

Defense counsel argued the element of asportation had not been satisfied because defendant "wasn't driving the car. Another person was driving the car. There's no evidence presented in this case that Mr. Delgado instructed or ordered the female driver to take off or drive the car." In rebuttal, the prosecutor maintained defense counsel's asportation argument misrepresented the law. "[W]hat he is arguing is the fact that the defendant wasn't driving the car, then he can't be guilty of kidnapping for robbery. Well, that's not what it [the kidnapping instruction] says. . . . [¶] So if in any situation you have somebody else doing the driving, then you're not going to be guilty of kidnapping for robbery? [¶] He was working with this other person. The other person was driving. It appears that

4

during this robbery and the struggle for many blocks, this person continued to drive while this struggle was going on."

The jury convicted defendant of the robbery and kidnapping for robbery of Perez.

The Court of Appeal affirmed. Relying on *Cook v. Lamarque* (E.D.Cal. 2002) 239 F.Supp.2d 985, and rejecting the Attorney General's reliance on *People v. Cook* (1998) 61 Cal.App.4th 1364, the appellate court held that because the evidence at trial supported a theory defendant did not directly move the victim but did aid and abet the driver to do so, the trial court was obliged to instruct on principles of accomplice liability as to the kidnapping charge. Treating the error as equivalent to the failure to instruct on an element of an offense, the court nonetheless held it was harmless beyond a reasonable doubt in light of the strong evidence defendant and the female driver acted together according to a preconceived plan.

We granted defendant's petition for review.

### DISCUSSION

Under section 31, "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)[2]

---

[2]     Conspirators bear a similar derivative liability for the criminal acts of their coconspirators, whether the conspiracy itself is charged or uncharged. (*People v.*

*(footnote continued on next page)*

5

As we explained in *People v. McCoy* (2001) 25 Cal.4th 1111, 1120, "the dividing line between the actual perpetrator and the aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." In *McCoy*, the two defendants had jointly participated in a fatal driveby shooting; the evidence showed both had shot their weapons, but only one caused the victim's death. Comparing the two defendants' liability for the homicide, we noted the overlap between direct perpetration of a crime and aiding and abetting in it. "Although Lakey was liable for McCoy's actions, he was an actor too. He was in the car and shooting his own gun, although it so happened that McCoy fired the fatal shots. . . . In another shooting case, one person might lure the victim into a trap while another fires the gun; in a stabbing case, one person might restrain the victim while the other does the stabbing. In either case, both participants would be direct perpetrators as well as aiders and abettors of the other. The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*Ibid.*)

---

*(footnote continued from previous page)*

*Valdez* (2012) 55 Cal.4th 82, 150; *People v. Pulido* (1997) 15 Cal.4th 713, 724.) Raising the issue for the first time in his reply brief, defendant contends the trial court was obliged to instruct sua sponte on an uncharged conspiracy. We decline to address the issue due to its belated presentation. (*People v. Peevy* (1998) 17 Cal.4th 1184, 1206.)

"Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) Section 209, subdivision (b)(1) prescribes greater punishment for aggravated kidnapping where the accused "kidnaps or carries away any individual to commit robbery . . . ." Kidnapping for robbery requires asportation, i.e., movement of the victim that is not merely incidental to the commission of the robbery and that increases the risk of harm over that necessarily present in the crime of robbery itself. (§ 209, subd. (b)(2); *People v. Rayford* (1994) 9 Cal.4th 1, 12.)

Here, as in *McCoy* and the hypothetical cases we discussed there, the evidence tended to show defendant acted in part as a direct perpetrator of kidnapping for robbery and in part as an accomplice to the crime. The evidence supports a finding defendant personally used force and fear to hold and detain Perez in the backseat of the car; he satisfied that conduct element of kidnapping for robbery directly by his own actions. With regard to asportation, the evidence was sufficient to support either theory—personal conduct or complicity. There was substantial evidence defendant personally moved Perez by preventing him, during their struggle in the backseat, from escaping a moving vehicle. (See *In re Michele D.* (2002) 29 Cal.4th 600, 604 [defendant asported infant victim on public bus].) The jury, however, could reasonably have determined it was the driver's locking of the doors, rather than defendant's use of force, that kept Perez in the car, and on this basis could have concluded defendant did *not* personally move Perez a substantial distance, but his female accomplice did; under this theory, defendant satisfied the asportation element of kidnapping only indirectly, by his intentional facilitation of the driver's conduct.

7

Even without a request, a trial court is obliged to instruct on " 'general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case' " (*People v. Prettyman*, *supra*, 14 Cal.4th at p. 264), or put more concisely, on " 'general legal principles raised by the evidence and necessary for the jury's understanding of the case' " (*id.* at p. 265). In particular, instructions delineating an aiding and abetting theory of liability must be given when such derivative culpability "form[s] a part of the prosecution's theory of criminal liability and substantial evidence supports the theory." (*Id.* at pp. 266-267 [natural and probable consequences theory of aiding and abetting liability].)

As explained above, substantial evidence supported the theory defendant satisfied the asportation element of the kidnapping charge only indirectly, through his agreement to or intentional facilitation of his accomplice's movement of the victim. The prosecutor relied at least in part on such a complicity theory, arguing to the jury that defendant "was working with this other person [while] [t]he other person was driving." Accomplice liability for the kidnapping was thus a theory raised by the evidence and necessary for the jury's full understanding of the case; the court erred in not instructing on this theory. (*People v. Prettyman*, *supra*, 14 Cal.4th at p. 265.)

For the contrary conclusion, the Attorney General relies on *People v. Cook*, *supra*, 61 Cal.App.4th 1364 (*Cook I*). In that case, the defendant confronted and fatally stabbed the victim while an accomplice took the bag of beers the victim had been carrying. The defendant was convicted of robbery and of first degree murder with a robbery-murder special circumstance. (*Id.* at pp. 1366-1367.) The appellate court held no instructions on aiding and abetting were required because the defendant "was guilty, if at all, as a direct perpetrator of the robbery." (*Id.* at p. 1368.) Relying on a common law distinction between principals of the first

8

degree (who personally engage in the criminal conduct) and those of the second degree (who only aid and abet another's criminal conduct), the *Cook I* court concluded the category of aider and abettor is limited to those whose personal conduct satisfies *none* of the elements of the charged offense: "If the defendant performed an element of the offense, the jury need not be instructed on aiding and abetting, even if an accomplice performed other acts that completed the crime." (*Id.* at p. 1371.)

Whether or not the common law distinguished in this rigid manner between direct perpetrators and accomplices, our understanding of California law, as reflected in *McCoy,* is more nuanced. "When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1120.) The aider and abettor "is liable for another's actions as well as that person's own actions. When a person 'chooses to become a part of the criminal activity of another, she says in essence, "your acts are my acts . . . ." ' [Citation.] But that person's *own* acts are also her acts for which she is also liable." (*Id.* at p. 1118.)

This realistic approach takes account of the fact that when an offense contains more than one act element, the People must establish the defendant's liability for conduct meeting *all* such elements. If the evidence does not show the defendant's personal conduct satisfied one of the elements, the defendant's guilt must rest in that respect on his or her derivative liability, as a coconspirator or an aider and abettor, for another's conduct. In the present case, where there was substantial evidence to support an accomplice liability theory as to one act element (asportation) of the kidnapping charge, and the prosecutor relied on that theory, the trial court was obliged to instruct on aiding and abetting liability as a principle

9

of law raised by the evidence and necessary for the jury's understanding of the case.[3]

Contrary to defendant's contention and the Court of Appeal's view, however, the trial court's instructional omission did not constitute failure to instruct on an element of the offense and did not unconstitutionally lessen the People's burden of proof. The instructions in the present case plainly did *not* relieve the People of their burden of proving all the elements of kidnapping for robbery. The jury was fully instructed on those elements, including asportation, as well as on the People's burden of proof beyond a reasonable doubt, and the principle that as to each offense the People must prove the defendant committed the prohibited act or acts with the intent or mental state required. None of the court's instructions suggested the People did not need to prove an element if the evidence showed another person's conduct satisfied that element.

This is not a case in which the jury received *incomplete* instructions on aiding and abetting liability. When an instruction tells the jury it may convict the defendant on a theory he or she aided and abetted in commission of the offense, but omits one or more of that theory's necessary findings, the error may be deemed equivalent to omitting an element of a charged offense. (See *People v. Beeman* (1984) 35 Cal.3d 547, 555, 561.) But that is not what happened here. Unlike in *Beeman*, this trial court did not simultaneously invite the jury to find the defendant guilty as an accomplice to kidnapping while misleading the jury as to the facts it needed to find guilt on that theory; rather, the court omitted from its

---

**3** To the extent *Cook I* (*People v. Cook*, *supra*, 61 Cal.App.4th 1364) held aiding and abetting instructions need not be given if the evidence shows the defendant personally performed *any* element of the charged offense, the decision is hereby disapproved.

10

instructions all mention of complicity, giving the jury no basis for resting a guilty verdict on anything other than defendant's personal commission of the criminal acts.[4]

For the proposition that the instructional error deprived defendant of due process, the lower court relied largely on *Cook v. Lamarque*, *supra*, 239 F.Supp.2d 985 (*Cook II*), a federal district court decision addressing the *Cook I* defendant's petition for writ of habeas corpus. According to *Cook II*, the ruling in *Cook I* "allows the prosecution to prove an offense by establishing only one element as to a particular defendant . . . so long as another actor committed the remaining elements." (*Cook II*, at p. 996.)

Whether the *Cook II* court correctly read the decision in *Cook I* might be debated, but on its face at least, *Cook I* did not hold the defendant could be convicted of robbery without proof he was responsible for taking property from the victim; the court held that the jury tasked with determining the defendant's responsibility need not have been given instructions on aiding and abetting liability. (*Cook I*, *supra*, 61 Cal.App.4th at pp. 1368, 1371.) In any event, the question now is not the constitutionality of *Cook I*'s holding, which we have explained was incorrect as a matter of California law, but whether the omission of aiding and abetting instructions in *this* case deprived defendant of due process. As explained above, it did not do so by failing to instruct on an element of the offense or by misleading the jury in an equivalent manner.

---

[4]    Although the prosecutor relied in argument on what appears to have been a complicity theory (see *ante*, at pp. 4-5), this does not establish a constitutional *instructional* error on the court's part. And defendant makes no claim of prosecutorial misconduct in this respect.

11

We consider, as well, the possibility that the lack of complicity instructions constituted federal constitutional error even though the omission was not equivalent to omission of an element. The evidence itself, as well as the prosecutor's argument, clearly brought the question of defendant's complicity in his female companion's acts into this case, and the jury may have considered complicity in reaching its verdicts. Yet the court gave them no instructions to guide any such deliberations. If the conceptual gap so created was likely to be filled in a manner that reduced the People's burden of proof, the omission of aiding and abetting instructions might constitute a violation of due process. As with an ambiguous instruction, we ask whether there is a reasonable likelihood (*Middleton v. McNeil* (2004) 541 U.S. 433, 437) the jury applied the instructions in a manner that deprived defendant of his constitutional rights.

In the circumstances of this case we conclude there was no such reasonable likelihood. For the jury to find defendant guilty of kidnapping, on the evidence before it, without finding either that he personally moved the victim or that he harbored the requisite mental state to be indirectly liable for the driver's asportation, would verge on the irrational. As already explained, the evidence allowed the jury reasonably to find defendant personally asported the victim by holding him in the backseat of the moving vehicle. But even if the jury relied on a theory of complicity to satisfy the asportation element, it is not reasonably likely it did so without finding defendant agreed to assist or intentionally assisted the driver's movement of the victim. While it is *possible* the jury believed defendant's testimony that he and the driver were not acting in concert, such a factual conclusion was not reasonably likely in light of all the evidence. The jury would have had to accept that defendant's casual acquaintance, "Myra," happened to show up as defendant and Perez left the bar; that after agreeing to drive the two men to Perez's address she spontaneously stopped the car, allowing defendant to

12

climb into the backseat; that as defendant attacked and robbed Perez, she spontaneously locked the car doors and began driving again; that after driving some additional blocks she again stopped, allowing defendant to push Perez out of the car; and that she then drove off, leaving the victim bleeding on the street. Such unmotivated actions are far less plausible than those obviously inferable from Perez's testimony, that defendant and the driver acted in concert to get Perez into the car and to transport him from El Charo to a place where defendant could rob him of his jewelry and money—an inference also consistent, as defendant's version is not, with the evidence of the "Myra and Mildred" notation in what the evidence suggested was the vehicle used for the crime.

Furthermore, the only reference to derivative liability made during trial— the prosecutor's argument that defendant "was working with" the driver to kidnap Perez—was not one that would lead the jury to apply a standard less than that required by law. Although not sufficient as a jury instruction, this phrase suggests the kind of shared intent necessary to aiding and abetting. No reasonable likelihood appears that the jury filled the gap created by the absence of complicity instructions in a manner that excused the prosecution from proving the facts essential to an aiding and abetting theory.

In the absence of any federal constitutional error, we assess prejudice from the court's failure to instruct on accomplice liability principles under the state error standard of *People v. Watson*, *supra*, 46 Cal.2d at page 836; we ask whether, considering the entire record, there was any reasonable probability of a more favorable result had such instructions been given. (See *People v. Prettyman*, *supra*, 14 Cal.4th at p. 274.) We conclude the error was harmless on that standard.

As the Attorney General observes, "it is hard to imagine how an aiding and abetting instruction would have helped [defendant], as it would have merely offered an alternative, additional means of establishing asportation without having

13

to prove [defendant] took part in transporting the victim." Indeed, the absence of complicity instructions allowed defense counsel to argue to the jury that asportation had not been demonstrated because defendant "wasn't driving the car." Had the jury been instructed on aiding and abetting or coconspirator liability, defense counsel would have been limited to arguing defendant was not responsible for the driver's actions, an argument that would have been unlikely to persuade the jury given the strong circumstantial evidence defendant and the driver were working together to kidnap and rob Perez.

Nor, as just explained, were the evidence or the arguments suggestive of a theory defendant inadvertently or unintentionally assisted the driver in moving the victim. The jury, which convicted defendant of robbery, apparently accepted Perez's version of events in the car over defendant's. That the jurors would nonetheless have accepted defendant's implausible claim he did not intend to assist the driver in moving the victim, had an aiding and abetting instruction posed that question, is very unlikely. Acquittal on the kidnapping charge was not reasonably probable had standard instructions been given on aiding and abetting liability.

We conclude the trial court erred under California law in failing to instruct on criminal complicity principles under the circumstances of this case, but that the error was harmless in light of the compelling circumstantial evidence defendant and the other participant intentionally cooperated to kidnap and rob the victim.

14

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

**CONCURRING AND DISSENTING OPINION BY KENNARD, J.**

At defendant's jury trial for the crime of kidnapping for robbery (Pen. Code, § 209, subd. (b)(1)),[1] the prosecution's evidence showed that defendant personally robbed but did not personally kidnap the victim; rather, he aided and abetted the kidnapper. The trial court did not, however, instruct the jury on the law of aiding and abetting, but only on the liability of a direct perpetrator for the crime of kidnapping for robbery, of which defendant was later convicted.

Like the majority, I conclude that the trial court's omission of aiding and abetting instructions was error but harmless. But unlike the majority, I am of the view that the error violated the federal Constitution, thus requiring reversal of defendant's conviction unless it appears beyond a reasonable doubt that the error did not, as I conclude, contribute to the jury's verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) In contrast, the majority views the error as violating only state law, in which case the inquiry is whether a reasonable probability existed that the error affected the trial's outcome (*People v. Watson* (1956) 46 Cal.2d 818, 836), a standard less favorable to a defendant than *Chapman*'s.

---

[1] All further statutory references are to the Penal Code.

1

This court has defined an aider and abettor as a person who, " 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)  This court later observed:  "When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.)

An element of kidnapping for robbery is asportation, meaning movement of the victim that is not merely incidental to the robbery and substantially increases the risk of harm beyond that necessarily present in the robbery itself.  (§ 209, subd. (b)(2); *People v. Rayford* (1994) 9 Cal.4th 1, 11-12.)  Defendant here did *not* personally asport the victim, Melvin Perez, because the kidnapping was based on Perez's being locked in a moving car driven not by defendant but by his companion.  Rather, by assisting the driver of the car, defendant acted as an aider and abettor.  Consequently, the jury needed to be instructed on the above described elements of aiding and abetting, which are additional to those of the charged crime of kidnapping for robbery.  The trial court, however, did not instruct the jury on aiding and abetting, but only on the liability of a direct perpetrator for the crime of kidnapping for robbery.

A trial court's failure to instruct on all the elements of an offense violates the federal Constitution.  (*Neder v. United States* (1999) 527 U.S. 1, 8-9 (*Neder*); *People v. Sakarias* (2000) 22 Cal.4th 596, 624-625 (*Sakarias*).)  When in a particular case jury instructions on aiding and abetting are called for, a trial court's

failure to so instruct is equivalent to not instructing the jury on all elements of the offense.  (*People v. Reyes* (1992) 2 Cal.App.4th 1598, 1601 (*Reyes*).)

According to the majority here, the jury could reasonably find that defendant *directly* committed the asportation element of kidnapping because "[t]here was substantial evidence defendant personally moved Perez by preventing him, during their struggle in the backseat, from escaping a moving vehicle."  (Maj. opn., *ante*, at p. 7.)  In support, the majority cites this court's decision in *In re Michele D.* (2002) 29 Cal.4th 600, 604 (*Michele D.*).  The issue there, however, pertained to the amount of force required to kidnap an unresisting infant or child, *not* whether the asportation element of kidnapping can be satisfied by preventing a victim from escaping a moving vehicle.  (*Id*. at p. 603.)

Even if *Michele D.*, *supra*, 29 Cal.4th at page 604, provided a basis of support for the majority's conclusion, here evidence is lacking that it was defendant who prevented Perez from escaping the moving car.  Perez testified that he voluntarily entered the car (the prosecutor did not claim otherwise), and that when he later tried to get out, he could not because defendant's companion, who was driving the car, had locked the rear doors in a way that prevented Perez from unlocking them from the backseat where defendant and Perez were.  The evidence thus shows that it was the car's driver, not defendant, who asported Perez.

In any event, a review of the record indicates that the jury must have convicted defendant as an aider and abettor, for two reasons.

First, ample evidence exists to support that theory.  On the evening of the incident, defendant and Perez had been drinking at the same bar and witnesses observed defendant staring at Perez's jewelry.  When Perez left the bar, hours after defendant had left, defendant was standing outside the bar next to a sport utility vehicle; Myra Gonzales was in the driver's seat.  Defendant and Gonzales suggested to Perez that he join them for a drink elsewhere, adding that they could

3

also give him a ride home. After Perez voluntarily entered the car, Gonzales drove several blocks before stopping so defendant could move from the front passenger seat to the backseat, where Perez was; Perez then tried to get out of the car but could not because the rear doors had been locked by Gonzales and could not be unlocked from the backseat. Gonzales continued driving while defendant robbed and stabbed Perez, after which defendant pushed Perez out of the car. These facts, considered together, show that defendant aided and abetted Gonzales in asporting Perez for the purpose of kidnapping for robbery.

Second, the prosecutor at trial relied on a theory of accomplice liability to establish the kidnapping's element of asportation. Responding to defense counsel's argument to the jury that the element of asportation had not been satisfied because defendant "wasn't driving the car," the prosecutor said in rebuttal: "[Defendant] was working with this other person. The other person [Gonzales] was driving. It appears that during this robbery and the struggle for many blocks, this person continued to drive while this struggle [between defendant and Perez] was going on."

As the evidence showed that defendant committed the kidnapping's element of asportation not as a direct perpetrator but only as an aider and abettor, the omission of jury instructions on the elements of aiding and abetting was tantamount to a failure to instruct on an element of the offense, here kidnapping for robbery. Because that omission made the jury unaware of the requisite elements, the omission implicates the federal Constitution. (See *Neder*, *supra*, 527 U.S. at pp. 8-9; *Sakarias*, *supra*, 22 Cal.4th at pp. 624-625.)

In explaining its conclusion that the trial court's error here does not violate the federal Constitution, the majority contrasts this case, in which the jury received *no* aiding and abetting instructions, with one in which the jury received *incomplete* aiding and abetting instructions. (Maj. opn., *ante*, at pp. 10-11.) With regard to

4

the latter situation, the majority says: "When an instruction tells the jury it may convict the defendant on a theory he or she aided and abetted in commission of the offense, but omits one or more of that theory's necessary findings, the error may be deemed equivalent to omitting an element of a charged offense." (Maj. opn., *ante*, at p. 10.) Here, the majority says, the trial court's error is not the equivalent of omitting an element of a charged offense because "the court omitted from its instructions all mention of complicity, giving the jury no basis for resting a guilty verdict on anything other than defendant's *personal commission* of the criminal acts." (Maj. opn., *ante*, at pp. 10-11, italics added.)

But, as I have explained, defendant did not *personally* commit the act of asportation. Defendant aided and abetted driver Gonzales's perpetration of that act, and the prosecution at trial relied on that theory. When an element of a charged offense is only supported by a theory of accomplice liability, entirely omitting accomplice liability instructions, like providing *incomplete* instructions (see *People v. Beeman* (1984) 35 Cal.3d 547, 555, 561), is tantamount to not instructing on an element of the offense (*Reyes*, *supra*, 2 Cal.App.4th at p. 1601), thus violating the federal Constitution (*Neder*, *supra*, 527 U.S. at pp. 7-9; *Sakarias*, *supra*, 22 Cal.4th at pp. 624-625). I now consider whether the error prejudiced defendant.

## II

A trial court's failure to instruct on an element of a charged offense violates the federal Constitution by relieving the jury of its obligation to determine whether all the elements of the offense were proven beyond a reasonable doubt; whether the error prejudices the defendant or is harmless is evaluated under the standard the high court articulated in *Chapman*, *supra*, 386 U.S. at page 24. (*Neder*, *supra*, 527 U.S. at pp. 8-9; *Sakarias*, *supra*, 22 Cal.4th at pp. 624-625.) Under *Chapman*, the pertinent inquiry is whether it appears "beyond a reasonable doubt that the

5

error complained of did not contribute to the verdict obtained." (*Chapman*, *supra*, at p. 24.) When the error pertains to omission of a jury instruction on an element of the offense, a reviewing court must determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (*Neder*, *supra*, at p. 19.)

As I have noted (see p. 4, *ante*), after defendant and accomplice Gonzales approached Perez outside the bar, they offered him a ride in their car, which he accepted. Once inside, driver Gonzales locked the car's rear doors to prevent Perez from getting out so defendant could rob him. In my view, these facts show beyond a reasonable doubt that the trial court's omission of aiding and abetting instructions did not contribute to the jury's conviction of defendant for kidnapping for robbery, because, based on the evidence presented, the jury would have found the elements of aiding and abetting had they been instructed on that theory. Therefore, the error at issue was harmless and, like the majority, I would affirm the Court of Appeal's judgment upholding defendant's conviction of kidnapping for robbery.

KENNARD, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Delgado

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 193 Cal.App.4th 1202
**Rehearing Granted**

_____

**Opinion No.** S192704
**Date Filed:** April 4, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Ronald H. Rose

_____

**Counsel:**

Robert Derham, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka and Lance E. Winters, Assistant Attorneys General, Paul M. Roadarmel, Jr., Lawrence M. Daniels, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert Derham
769 Center Boulevard, #175
Fairfax, CA  94930
(415) 485-2945

David F. Glassman
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2355