Filed 3/9/21  P. v. Brown CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES BROWN,<br><br>    Defendant and Appellant. | B303601<br><br>(Los Angeles County<br>Super. Ct. No. BA146986) |

APPEAL from an order of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Reversed with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Charles Brown appeals from an order denying his petition under Penal Code section 1170.95[1] for failure to make a prima facie showing he is entitled to relief.  We reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Brown and His Nephew Rob a Cocaine Dealer*

Bobby Cisneros and Eduardo Quiroz were cocaine dealers; Cisneros acquired the cocaine, and Quiroz sold it.  Brown was one of their customers.  One morning in March 1997 Brown told Quiroz he wanted to buy some cocaine.  Quiroz spoke with Cisneros, and Cisneros told him to stop by his apartment.  Cisneros said that, if he had the cocaine, Quiroz could sell it to Brown.

Later that afternoon police responded to a shooting at Brown's residence.  On the floor of a bedroom used by Brown they found Cisneros's dead body near the doorway.  He had been shot in the back of the head with a shotgun.  Cisneros and Brown had been seen together earlier that afternoon.

There were two percipient witnesses, both children.  One of them was sitting on the front porch of his aunt's house doing homework.  He saw Brown get out of a white van, heard a man say, "I did the best that I could," and watched Brown go into his (Brown's) apartment building.  The witness later heard two gunshots and saw two black men run out of the house.  One of the men was wearing a baseball cap, had a revolver, and screamed, "Let's go!"  The two men left in a red truck.

---

[1]    Statutory references are to the Penal Code.

The other witness, who knew Brown, was playing with friends on the roof of a house near Brown's house. He heard someone say, "Come here, come here man. Fool, fool." Then he heard gunshots. The witness saw Brown, carrying a gun, and another person run out of the house and drive away in a red pickup truck.

Earlier that day, a woman spoke with Brown's nephew, who told her that he and Brown were "about to go jack (rob) some Mexicans" and that, if she saw Brown with some Hispanics chasing him, she should go home. Brown's nephew showed the woman a foot-long shotgun and said that, after the robbery, she would not see him for a long time, but that he would give her some money so she could get her hair done. The woman later told police that Brown and his nephew were planning a robbery.

At some point Quiroz went to the apartment where he and Cisneros kept their cocaine and discovered half of it was gone. Quiroz identified Brown from a six-pack photographic line up. (*People v. Brown* (Jan. 19, 2010, B212584) [nonpub. opn.].)

B. *A Jury Convicts Brown of Second Degree Murder*

The People charged Brown with murder and alleged that he personally used a firearm, within the meaning of section 12022.5, subdivision (a), and that a principal in the offense was armed with a firearm, within the meaning of section 12022, subdivision (a)(1). In 2008 a jury convicted Brown of second degree murder. The jury found not true the allegation Brown personally used a firearm, but found true the allegation a principal was armed with a firearm. The trial court sentenced Brown to a prison term of 16 years to life. Brown appealed, and we affirmed.

3

## C. The Legislature Enacts Senate Bill No. 1437 and Establishes the Section 1170.95 Petition Procedure

Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder by amending sections 188 and 189. Section 188, subdivision (a)(3), provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e), provides that, with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs (that is, those crimes that provide the basis for first degree felony murder), an individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437, through new section 1170.95, also authorized an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if the individual could not now be convicted of murder under changes Senate Bill No. 1437 made to the definition of murder. (*People v. Gentile* (2020) 10 Cal.5th 830,

4

842-843; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236-237, petn. for review pending, petn. filed Jan. 15, 2021, S266652 (*Rodriguez*).)  If the petition contains all required information, and the court determines the petition is facially sufficient, section 1170.95, subdivision (c), prescribes a two-step procedure for determining whether to issue an order to show cause:  "'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'"  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

If the court issues an order to show cause, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1); see *Rodriguez*, *supra*, 58 Cal.App.5th at p. 237, petn. for review pending; *Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted.)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing.  (*Rodriguez*, at p. 237; see § 1170.95, subd. (d)(3).)  The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence.  (*Rodriguez*, at p. 237; see *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8,

5

2020, S262481.)  The record of conviction includes the verdict and the jury instructions.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033; *Verdugo*, at p. 330.)

D.      *Brown Files a Petition Under Section 1170.95, Which the Superior Court Denies*

In January 2019 Brown, representing himself, filed a petition under section 1170.95.  He alleged, among other things, that he was convicted of first or second degree murder under a felony murder or natural and probable consequences doctrine, that he could not now be convicted of murder because of the changes to sections 188 and 189, and that he was not the actual killer, did not with the intent to kill aid and abet the actual killer, and was not a major participant in the underlying felony who acted with reckless indifference to human life.  The superior court appointed counsel to represent Brown, and the People filed a response to the petition.

The superior court (the same judge who presided over the trial in 2008) denied the petition, ruling Brown had not made a prima facie showing he was entitled to relief under section 1170.95.  Although the court initially indicated the jury convicted Brown on a theory of felony murder, the prosecutor (the same prosecutor who tried the case against Brown) stated that he had argued both "regular murder" and felony murder and that the jury convicted Brown of "straight second degree murder."

The court ruled that Brown "could not have been convicted of felony murder because . . . the underlying felony was robbery in the first degree.  So it's clear from the record, and [the jurors]

6

were never instructed on [a] natural and probable consequences theory.  So it appears to me he does not come within the group of individuals covered by section 1170.95 who would be entitled to [relief] because the conviction was neither for felony murder nor on the theory of natural and probable consequences."  The court also ruled that, "even if this [had] been a conviction under a felony murder theory," the "evidence made it clear" Brown "was both a major participant and that he acted with reckless indifference to human life."  Brown timely appealed.

## DISCUSSION

A.  *The People Had To Show the Record Conclusively Established Brown Was Not Convicted of Felony Murder*

"[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true.  [Citation.]  The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.'  [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding

7

involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980; see *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, review granted.)

Brown alleged, among other things, that he was convicted under a theory of felony murder and that he could not now be convicted under that theory in light of the amendments to sections 188 and 189. The superior court had to accept these allegations as true and issue an order to show cause "unless facts in the record conclusively refute them as a matter of law." (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 968; see *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues," and "absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question his evidence"].)

The People argue the record conclusively refutes Brown's allegation he was convicted of felony murder because the jury convicted him of second degree malice murder. According to the People, "the record of conviction shows that [Brown's] jury did not find him guilty of . . . felony murder," but "rather second degree murder on the ground[ ] he acted with express or implied malice." The People assert the "petition was properly denied because the instructions and the jury verdict conclusively establish [Brown's] second degree conviction was based on express or implied malice—theories which remain valid after the enactment of

Senate Bill No. 1437." As stated, that is what the prosecutor argued and the trial court ruled at the hearing on Brown's petition. The record, however, is not so clear.

B. *The Trial Court Erred in Ruling Brown Failed To Make a Prima Facie Showing of Entitlement to Relief*

At Brown's trial, the court instructed the jury on murder with malice aforethought, first degree murder, first degree felony murder where the defendant is the killer, and first degree felony murder where the defendant is not the killer. The People acknowledge the court did not instruct on aiding and abetting, the natural and probable consequences doctrine, or second degree felony murder. As stated, the jury convicted Brown of second degree murder, without specifying the theory, and found not true the allegation he personally used a firearm.

Instructing the jury on malice murder with CALCRIM No. 520, the trial court stated, in relevant part: "The defendant is charged in count 1 with murder. To prove that the defendant is guilty of this crime, the People must prove: 1. The defendant committed an act that caused the death of another person; 2. When the defendant acted, he had a state of mind called malice aforethought." The instruction defined the two kinds of malice, express and implied.

The trial court then instructed the jury with CALCRIM No. 521, first degree murder: "The defendant has been prosecuted for first degree murder under two theories: No. 1, the murder was willful, deliberate, and premeditated. And No. 2, the murder was committed during the course of a robbery or attempted robbery. . . . Each theory of first degree murder has different requirements, and I will instruct you on both." After

9

instructing the jury on the requirements of willful, deliberate, and premeditated murder, the trial court stated: "The second theory under which the People are proceeding as to first degree murder is called felony murder. . . . All other murders are of the second degree."

The trial court also instructed the jury with CALCRIM No. 540A, first degree felony murder where the defendant allegedly committed the fatal act: "The defendant is charged in count 1 with murder under a theory of felony murder. To prove that the defendant is guilty of first degree murder under this theory, the People must prove that . . . 1, the defendant committed or attempted to commit robbery; 2, the defendant intended to commit robbery; and 3, while committing or attempting to commit robbery, the defendant did an act that caused the death of another person. A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent."

Also with CALCRIM No. 540B, felony murder where a co-participant allegedly committed the fatal act: "The defendant is charged in count 1 under a theory of felony murder. The defendant may also be guilty of murder under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the perpetrator. To prove that the defendant is guilty of first degree murder under this theory, the People must prove that, 1, the defendant committed or attempted to commit robbery; 2, the defendant intended to commit robbery; and 3, while committing or attempting to commit robbery, the perpetrator did an act that caused the death of another person. A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent."

10

And with CALCRIM No. 548, multiple theories of murder: "The defendant has been prosecuted for murder under two theories: No. 1 is malice aforethought and premeditation; and No. 2, felony murder. Each theory of murder has different requirements. And I . . . have instructed you on both already. You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory."

So far, so good. But the trial court also responded to a series of questions from the jurors, giving them additional instructions. The jury's first question was: "Do we consider murder in second degree? What is defin. of 2nd degr?" The trial court (a judge substituting for the judge who presided over the trial) answered the jury's question, but the answer is not in the record.[2]

The jury's second question was: "In the standard for express malice—in the definition of murder must the 'act' be the <u>direct</u> cause of death?" With the agreement of counsel, the trial court (the same substitute judge) answered the question by referring the jury to CALCRIM No. 520.

The jury's third (and, for purposes of this appeal, the most significant) question was: "In the standard for <u>second </u>degree murder, can the defendant be found guilty, ~~where~~ even if another person did the act that resulted in the death." Brown contends that this question concerned CALCRIM No. 540B and that "it can be reasonably inferred [the] jurors were asking if the felony

---

2     The court's minute order states: "The jury submits a question and at 10:45 a.m., off the record, the jury's question is answered."

11

murder rule also applied to second degree murder." The trial court (a different judge substituting for the judge who presided over the trial; i.e., a third judge) answered the question, "Yes."[3] Brown contends that, upon receiving this answer, the "jurors would reasonably understand that second degree murder could also be based on felony murder." And as stated, the jury found Brown guilty of second degree murder.

The record of conviction does not conclusively show the jurors did not convict Brown of second degree murder based on a felony murder theory. In response to the jury's third question, the court instructed the jurors that they could find Brown guilty of second degree murder "even if another person did the act that resulted in the death." That language came from CALCRIM No. 540B, the instruction for felony murder, which stated that the defendant "may also be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death." Thus, one interpretation of the record is that the trial court's response to the jury's question suggested the jurors could find Brown guilty of second degree murder under a theory of felony murder. Moreover, because the trial court did not instruct the jury on aiding and abetting principles, the record does not establish the jury convicted Brown of second degree murder on an aiding and abetting theory. (See *People v. Delgado* (2013) 56 Cal.4th 480, 488 ["instructions delineating an aiding and abetting theory of liability must be given when such derivative culpability 'form[s] a part of the prosecution's theory of criminal liability'"]; see also *Cole v. Arkansas* (1948) 333 U.S. 196, 202

---

[3] The answer to the jury's third question, written at the bottom of the form used by the jury to ask the question) states: "The answer is yes per Judge Veals."

12

[68 S.Ct. 514, 92 L.Ed.644] ["petitioners [are] entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court"]; *People v. Kunkin* (1973) 9 Cal.3d 245, 251 ["We, of course, cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule."].) At a minimum, the record on the whole does not conclusively refute Brown's allegation that the jury convicted him on a theory of murder that is no longer valid. (See *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 813 ["If a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories, unless the record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden," and "the trial court should take him at his word and not engage in factfinding on the issues 'without first issuing an order to show cause and allowing the parties to present evidence at a hearing.'"]; see also *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2 [under Senate Bill No. 1437 "the second degree felony-murder rule in California is eliminated"]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1142, fn. 3 [Senate Bill No. 1437 "brings into question the ongoing viability of second degree felony murder in California"].)

The People suggest that Brown's contention the jurors "were asking about the second degree felony murder rule" is "sheer speculation, as the question was equally consistent with the possibility the jury thought [Brown] was a direct aider and abettor to the murder." But that the jury's question and the court's answer may be "equally consistent" with a theory other than second degree felony murder is Brown's point: Because a 50 percent chance is only halfway to conclusive, the record of

13

conviction does not conclusively refute that Brown was convicted of felony murder and entitled to relief under section 1170.95.  In addition, as discussed, the trial court did not instruct the jury on aiding and abetting.

Finally, Brown argues, the People concede, and we agree that, under the circumstances of this case, the trial court erred in ruling at the prima facie stage that "the evidence showed he was a major participant in the underlying robbery who acted with reckless indifference to human life."  (See *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 816 ["The major participant and reckless indifference findings the trial court made based solely on the record evidence entail the weighing of evidence, drawing of inferences, and assessment of credibility that should be left to the factfinding hearing process contemplated by section 1170.95, subdivision (d)."].)  The jury in Brown's trial made no such finding, and the prosecutor did not argue in opposition to Brown's petition that Brown was a major participant who acted with reckless indifference to human life.  The superior court can address this issue after issuing an order to show cause.

14

## DISPOSITION

The trial court's order denying Brown's petition is reversed. The trial court is directed to issue an order to show cause under section 1170.95, subdivision (c), and to hold a hearing under section 1170.95, subdivision (d), to determine whether to vacate Brown's murder conviction and to recall his sentence and resentence him.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.

15