Filed 5/16/23  P. v. Roberts CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RECHARD ROBERTS,<br><br>    Defendant and Appellant. | 2d Crim. No. B318327<br>(Super. Ct. No. BA458075)<br>(Los Angeles County) |

Rechard Roberts appeals from the judgment entered after a jury had found him guilty of first degree murder.  (Pen. Code, §§ 187, subd. (a); 189, subd. (a).)[1]  The jury found true allegations that a principal had discharged a firearm causing death (§ 12022.53, subd. (d)) and that the offense had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).  The jury found not true an allegation that appellant had personally discharged a firearm.  The trial court found true one

---

[1] All statutory references are to the Penal Code.

prior strike within the meaning of California's "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

The trial court granted the People's written motion to dismiss the firearm, gang, and prior strike allegations.[2] Appellant was sentenced to prison for 25 years to life.

Appellant contends the trial court erred in denying his motion for a new trial. The grounds for the motion were that the evidence was insufficient to support an instruction on aiding and abetting and that the verdict was contrary to the evidence. We affirm.

*Facts*

The victim, Robert Huey, was a drug dealer. He sold drugs on Gladys Avenue between 5th and 6th Street in downtown Los Angeles. The area is part of "Skid Row" and is "sort of an open-air market for drugs." Huey was a member of a criminal street gang – the Rolling 30's Harlem Crips. Appellant sold drugs in the same area and was a member of a rival gang – the Five-Deuce Hoovers. Appellant's gang moniker was Scrappy.

Huey and appellant got into a fight. Huey "knocked out" appellant. After he regained consciousness, appellant "said that he was going to come back with a strap." A "strap" is slang for a gun.

A few days later, in the morning Huey drove his friend, Tony McKing, down Gladys Avenue to 6th Street. McKing saw a white sedan parked on the street. "[A]s they drove by it, they

_____

[2] The motion to dismiss stated that it was made pursuant to "new Special Directives issued by George Gascon," the Los Angeles County District Attorney. The special directives were attached to the motion.

2

saw a guy named J.R. tap on the window" of the white sedan. Huey had previously fought J.R. and had won the fight. Huey parked his vehicle in front of the white sedan.

Huey and McKing got out of the vehicle. On direct examination Officer Jake McMains testified that McKing had told him: "The white sedan pulled up behind them. A driver got out, [and] stood by the driver door. [¶] And then [appellant] exited the passenger side door holding a gun asking [Huey] if he was looking for him. And then McKing told [appellant], 'Man we're over this. It's no more. Leave it alone.'"

However, on cross-examination Officer McMains testified that he had "misspoke[n]" about McKing seeing appellant holding a gun. McKing did not say he had seen a gun. The prosecutor subsequently played McMains's body-cam video of his conversation with other officers immediately after he had interviewed McKing. In the video McMains told the officers that McKing had said appellant "had the gun." Based on the video, McMains reversed himself and testified that McKing had said appellant "had the gun."

Officer McMains continued: McKing and Huey "turned their back [on appellant] and started walking away. . . . McKing hear[d] [appellant] say, 'It's on Hoover.' And he heard . . . gunshots and saw [Huey] fall to the ground. [¶] And then the white car sped off." McKing told McMains that appellant had shot Huey.

At trial McKing testified that he did not see who had fired the shots because his back was turned toward the shooter. He also testified that he had not seen a gun – "I just heard shots."

Huey died as a result of "11 separate gunshot wounds."

3

In his defense, appellant called Dejon Canada. Canada testified that he had seen a "dude in all black" shooting at Huey and appellant. They both fell to the ground.

*Prosecutor's Closing Argument*

The prosecutor argued that appellant was the shooter. But if the jury found that appellant was not the shooter, the prosecutor argued that appellant had aided and abetted the shooter.

*Motion for New Trial*

Appellant's motion for new trial was based on two grounds. The first was that the trial court had "misdirected the jury in a matter of law." (§ 1181, subd. 5.) Appellant contended the trial court had erroneously instructed the jury on aiding and abetting because there is no substantial evidence that would support a conviction on this theory.

The second ground for the motion was that "the verdict is contrary to the evidence." (See § 1181, subd. 6.) Appellant claimed: "The paucity of the evidence in support of the theory of aiding and abetting is striking. . . . [W]e do not know who the shooter was, or what if any connection he had with the defendant. The evidence does [not] give any indication as to . . . whether the Defendant shared [the shooter's] intent."

*Hearing on the Motion for New Trial*

At the hearing on the motion for a new trial, defense counsel said appellant's murder conviction must have been based on an aiding and abetting theory because the jury found not true an allegation that he had personally discharged a firearm. Counsel stated, "I don't believe the court was correct in giving the [aiding and abetting] instruction. But aside from that issue, the

4

question is whether there was sufficient evidence to find him guilty."

*The Trial Court Did Not Err in Denying the Motion for New Trial Based on the Erroneous Instruction of the Jury*

""""We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard." [Citations.] "'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion.""" (*People v. Lightsey* (2012) 54 Cal.4th 668, 729.) But both the People and appellant maintain that the standard of review for the claimed instructional error is de novo review. Whether we apply the abuse of discretion or the de novo standard of review, the result is the same.

"'The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. [Citation.] To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction. We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented. [Citation.]' [Citations.] Substantial evidence is evidence "'of ponderable legal significance . . . reasonable in nature, credible, and of solid value." . . ."' (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408-409.)

"Under section 31, '[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act

5

constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.' 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.'" (*People v. Delgado* (2013) 56 Cal.4th 480, 486.)

Substantial evidence supports appellant's murder conviction based on a theory of aiding and abetting. It is uncertain whether appellant was the shooter. McKing did not see who had fired the shots. His back was turned toward the shooter when the shots were fired. The shots could have been fired by appellant, who was the passenger in the white sedan, or by the driver of the vehicle, or by J.R., who had tapped on the window of the white sedan when Huey's vehicle drove past it.

If appellant was not the shooter, a reasonable trier of fact could find beyond a reasonable doubt that he promoted or encouraged the shooting with the requisite knowledge and intent to qualify as an aider and abettor. Appellant had a motive to shoot Huey. A few days earlier, Huey had humiliated him by knocking him unconscious during a fight.

It is reasonable to infer that appellant provided the firearm used in the shooting. After the fight, appellant "said that he was going to come back with a strap," i.e., a gun. The police recovered nine .40 caliber cartridge casings near Huey's body. The casings had been ejected from a semiautomatic handgun. During a search of appellant's residence, the police found a handgun case for a Ruger firearm. Inside the case was an owner's manual for a

6

Ruger semiautomatic handgun capable of firing .40 caliber ammunition.

Moreover, Huey and appellant were members of rival gangs. Immediately before the shooting, appellant said, "'It's on Hoover.'" A gang expert testified that when a gang member says that a crime is "on" his gang, it means that the crime is "for the benefit of that gang [and] that's the reason why they're doing it." The gang expert explained that "yelling out the gang name" "shows that he's not afraid to commit a crime in broad daylight where there's people seeing. . . . It elevates the gang status that makes other gangs afraid of it, makes citizens afraid of it."

Thus, we agree with the People that "even if appellant was not the shooter, the evidence . . . showed that appellant was working in concert with the shooter." We reject appellant's contention that there is no "evidence from the scene which indicate[s] that Appellant was anything but a bystander."

*Appellant Forfeited Claim that Trial Court Failed to Consider Whether the Verdict Was Contrary to the Evidence*

The second ground for the new trial motion was that "the verdict is contrary to the evidence." "In deciding such a motion, the trial court's function is to 'see that the jury intelligently and justly perform[ed] its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict.' [Citation.] The trial court's duty is to review the evidence independently and satisfy itself that the evidence as a whole is sufficient to sustain the verdict." (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251.) "The trial court has broad discretion in determining whether the evidence has sufficient probative value to sustain the verdict [citation], and its

7

order will not be reversed on appeal 'absent a manifest and unmistakable abuse of that discretion.'" (*Id*. at p. 1252.)

Appellant argues that "the trial court abused its discretion by failing to independently review the evidence for sufficiency." (Capitalization and bold omitted.) Appellant forfeited the argument because he failed to press for a ruling on his claim that the verdict was contrary to the evidence. In its ruling on the motion for a new trial, the court inadvertently considered only whether it had erred in giving the instruction on aiding and abetting: "I'm a little confused . . . . [¶] . . . [¶] . . . [¶] *The issue that I have here – and maybe I'm missing the point – was that the court was wrong in giving the aider and abettor instructions. . . .* [¶] . . . [¶] The jury was given the correct aider and abettor instructions, and they found that [appellant] aided and abetted with the necessary intent. [¶] So the motion for a new trial is denied." (Italics added.)

Defense counsel did not object that the trial court had failed to consider his claim that the jury's verdict was contrary to the evidence. After the court said, "maybe I'm missing the point," counsel should have interjected that it was missing the point because the new trial motion involved not only the propriety of the aiding and abetting instruction, but also the sufficiency of the evidence. "[H]is failure to press for a ruling [on the sufficiency of the evidence] waives the issue on appeal." (*People v. Cunningham* (2001) 25 Cal.4th 926, 984.) "If the trial court's failure to hear or rule on the new trial motion appears to be inadvertent, the defendant must make some appropriate effort to obtain the hearing or ruling. [Citations.] "'[W]here the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have

the court *actually rule.*  If the point is not pressed and is forgotten, [the party] may be deemed to have waived or abandoned it . . . .""" (*People v. Braxton* (2004) 34 Cal.4th 798, 813; see also *People v. Ramirez* (2006) 39 Cal.4th 398, 450 ["Defendant's failure to press the court for a ruling 'depriv[ed] the trial court of the opportunity to correct potential error'"].)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                        YEGAN, J.

We concur:


        GILBERT, P. J.


        BALTODANO, J.

9

Craig Richman, Judge

Superior Court County of Los Angeles

_____

Spolin Law and Aaron Spolin, Jeremy M. Cutcher, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.