Filed 8/29/25  P. v. Washington CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TONY WASHINGTON,<br><br>    Defendant and Appellant. | D083542<br><br><br><br>(Super. Ct. No. SCN447135) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed as modified.

Sarah S. Sanger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

### I. INTRODUCTION

A jury convicted Tony Washington of burglary, grand theft, unlawfully taking and driving a vehicle, and receiving a stolen vehicle.  Washington

challenges the burglary and grand theft verdicts on appeal, claiming the trial court erred in failing to properly instruct the jury on aiding and abetting, and insufficient evidence supported that he directly perpetrated the offenses. The People concede, and we agree, the trial court erred by only partially instructing the jury on aiding and abetting. However, under the circumstances here we find the error harmless. We also find sufficient evidence that Washington aided and abetted the burglary and grand theft. We reject Washington's claim that the court's aiding and abetting instructional error limits our review of the evidence's sufficiency to a direct perpetrator theory. Finally, without first imposing a sentence, the trial court improperly stayed the grand theft and unlawfully taking and driving a vehicle counts. We therefore modify the judgment to impose a sentence for the stayed counts and affirm the judgment as modified.

## II. BACKGROUND

On August 28, 2023, Washington, his girlfriend Khadijah Young, and Shauniece Morris drove to a Lululemon clothing store in a stolen car. Leaving the car running in the parking lot, Washington and Young entered the store together, with Morris following behind.

Carrying a blue bag that she brought into the store, Young walked around grabbing another bag and various items of clothing. Washington initially stayed close to his two companions, but then meandered through the store. Washington occasionally watched Young and Morris, scanned the store and its exit, left briefly to discard trash, and talked to two different salespeople.

Washington reunited with Young and Morris at the back of the store, where both Young and Morris grabbed additional items and placed some merchandise on a table. Watching Young talk to a salesperson, Washington

2

awkwardly took some of the clothing that was already on that table and moved it to a nearby shelf. The salesperson disappeared down a back hallway, and a moment later, Washington walked down that hallway and looked in both directions. The salesperson emerged and Washington spoke to her as the two rejoined Young and Morris.

Young took the items she collected and her blue bag into a dressing room. Washington joined Young in the dressing room, where the two remained behind a closed door for approximately 90 seconds. When they emerged, Young carried her bag as well as a few Lululemon items that she returned to the store displays. Washington and Young walked out together, having no reaction to the store alarm triggered by their departure.

Approximately 15 minutes later, a police officer stopped Washington while he was driving the stolen car. Both Young and Morris were in the vehicle, along with $1,386 of stolen Lululemon merchandise.

The San Diego County District Attorney's Office charged Washington with burglary (Pen. Code,[1] § 459; count 1), grand theft (§ 487, subd. (a); count 2), unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a); count 3), and receiving a stolen vehicle (§ 496d; count 4).

At Washington's trial, the trial court admitted footage from Lululemon's surveillance cameras depicting Washington, Young, and Morris's actions in the store. Washington testified, stating he was not "completely sure" if Young or Morris were going to steal anything from Lululemon, but he "didn't want to be involved" in anything.

At the end of the trial, the court instructed the jury that "[t]o be guilty of burglary as an aider and abettor, the defendant must have known of the perpetrator's unlawful purpose and must have formed the intent to aid,

---

[1]    All undesignated section references are to the Penal Code.

3

facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure." (CALCRIM No. 1702.) However, outside this burglary-specific instruction the trial court did not otherwise explain aiding and abetting and how it applied in other contexts. This additional information, contained in CALCRIM Nos. 400 and 401 (see *post*), explains aiding and abetting generally, and opens those concepts to crimes like grand theft. Neither party requested these other instructions.

In his closing argument, the prosecutor argued that "the first two crimes of burglary and the grand theft are under an aiding and abetting theory, right. I'm not saying that Mr. Washington was the one who took the clothes. Although, I think it's pretty clear from the video that he didn't take the clothes." The prosecutor then explained aiding and abetting liability, giving several examples. He argued that Washington aided and abetted burglary and grand theft by acting as a lookout in the store, distracting employees by talking to them and moving clothes, helping Young fill her bag inside the dressing room, and escorting Young out of the store.

Washington's counsel highlighted that burglary and grand theft are specific intent crimes, reiterating that counts 1 and 2 were based on aiding and abetting. Defense counsel argued that Washington's actions in the dressing room were unknown, and that walking around the store and moving items was insufficient to prove Washington's guilt because "mere presence is not enough."

The jury found Washington guilty of all four counts. Washington admitted three prior strike convictions (§ 667, subds. (b)–(i)), that he was on probation when the crimes were committed (Cal. Rules of Court, rule 4.421(b)(4)), and that he served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)).

4

The trial court struck Washington's prior strikes as to the vehicle related counts and sentenced Washington to four years in prison. Washington received two years for the burglary, doubled to four for his strike priors, plus a concurrent two years for unlawfully taking and driving a vehicle. The trial court stayed the grand theft and receiving a stolen vehicle counts pursuant to section 654.[2] The trial court did not impose a sentence for the stayed counts, stating that doing so was "barred by [section] 654." Washington appealed.

## III. DISCUSSION

### A. The Trial Court's Failure to Fully Instruct the Jury on Aiding and Abetting Was Harmless

"[I]nstructions delineating an aiding and abetting theory of liability must be given when such derivative culpability 'form[s] a part of the prosecution's theory of criminal liability and substantial evidence supports the theory.' " (*People v. Delgado* (2013) 56 Cal.4th 480, 488.) The People's sole theory for counts 1 and 2 was aiding and abetting, but the trial court only partially instructed on that theory. It used CALCRIM No. 1702, describing the required intent for aiding and abetting a burglary, but it did not instruct on the parameters of aiding and abetting in general or for grand theft. As the People concede, the trial court erred.

Nonetheless, the error was harmless even under the beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18. (See *People v. Delgado, supra,* 56 Cal.4th at p. 490 ["[w]hen an instruction tells the jury it may convict the defendant on a theory he or she aided and

---

2    Pursuant to section 654, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

5

abetted in commission of the offense, but omits one or more of that theory's necessary findings, the error may be deemed equivalent to omitting an element of a charged offense," an error evaluated under the *Chapman* standard].)

First, the crux of the burglary and theft charges was whether Washington knew Young was stealing and whether he intended to help her. The trial court correctly instructed the jury on these issues, stating, "[t]o be guilty of burglary as an aider and abettor, the defendant must have known of the perpetrator's unlawful purpose and must have formed the intent to aid, facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure." Although these instructions were burglary specific, the intent to steal which underpinned the burglary encompassed the theft activity which occurred in the Lululemon store. It was the same conduct, and both the prosecutor and defense counsel informed the jury that the theft count was based on an aiding and abetting theory. The trial court also told the jury to "[p]ay careful attention to all of the[] instructions and consider them together."

Second, counsel's argument filled in the gaps from the trial court's oversight. The standard instructions for aiding and abetting are set out in CALCRIM Nos. 400 and 401. CALCRIM No. 400 states, "[a] person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

CACLCRIM No. 401 instructs, "[t]o prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove

6

that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  If relevant, the instruction also states, "[i]f you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."  (CALCRIM No. 401.)

In closing argument, the prosecutor covered the general aiding and abetting principles stated in CALCRIM No. 400, as well as the elements in CALCRIM No. 401.  He argued, "the law allows for individuals to also be held accountable for their actions when they act in ways that aid and abet. . . .  So there's a perpetrator, which is the one who directly commits the crimes. . . . [¶] . . . The aider and abettor is the other person . . . someone who assists with the commission of the crime, whether before or during the commission of that crime. . . . [¶] . . . The perpetrator is the one who commits the crime.  The aider and abettor is someone who knows that the perpetrator is intending to commit the crime.  And then either before or during the commission of that crime, the defendant intends to aid or abet that person by assisting in some way."  The prosecutor then gave several examples of aiding and abetting,

7

including being a lookout, helping a perpetrator avoid detection, or smashing a window to allow another to burglarize a house.

Defense counsel also clarified that "mere presence is not enough" for aiding and abetting liability. The jury was therefore informed of the principle that Washington characterizes as "the most critical part of the aiding and abetting instructions."

Accordingly, counsel on both sides explained in detail to the jury all relevant aspects of aiding and abetting. Although argument is not the equivalent of a jury instruction, it carries weight here because neither attorney objected to the other's explanation of the law, which was correct and did not conflict with the trial court's instructions. (*People v. Young* (2005) 34 Cal.4th 1149, 1202 [we consider "the arguments of counsel in assessing" the harmlessness of instructional error].) Finally, significant evidence showed Washington's guilt as an aider and abettor. Washington arrived at Lululemon with Young and Morris in a stolen car that they kept running in the parking lot. Washington's actions throughout the store, where he watched Young and Morris, surveyed the surroundings, occupied salespeople, and awkwardly moved clothes, were consistent with an intent to help Young accomplish her theft. Washington then joined Young in the dressing room for approximately 90 seconds, which is where the stolen merchandise must have been concealed in Young's bag. Washington did not react to the store's alarm that Young triggered on their departure, demonstrating he was not surprised by the theft. And approximately 15 minutes later, police caught Washington driving the stolen vehicle with Young, Morris, and the Lululemon items inside.

In sum, the trial court correctly instructed the jury on the disputed knowledge and intent aspects of aiding and abetting burglary, the grand theft

8

charge was based on the same conduct, and counsels' arguments explained the remaining requirements of aiding and abetting liability. Based on these circumstances, as well as the surveillance footage that captured the crimes, we are convinced beyond a reasonable doubt that the instructional error did not contribute to the verdict. The error was therefore harmless and does not warrant reversal.

B. *Substantial Evidence Supports the Jury's Guilty Verdicts for Burglary and Grand Theft*

Washington argues there was insufficient evidence to convict him as the direct perpetrator of burglary or grand theft. He further contends that based on the trial court's incomplete aiding and abetting instructions, we may not review the sufficiency of the evidence under an aiding and abetting theory. We disagree.

1. Effect of the Instructional Error on Our Substantial Evidence Review

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

Washington does not cite any authority to support his claim that our substantial evidence review is limited based on the trial court's instructions.

9

There is such a rule in civil cases, where " '[w]e review the sufficiency of the evidence to support a verdict under the law stated in the instructions given, rather than under some other law on which the jury was not instructed.' " (*Mazik v. Geico General Ins. Co.* (2019) 35 Cal.App.5th 455, 465.)  We are not aware of any cases applying this rule in the criminal context, and we nonetheless find it inapplicable.

The civil rule applies when there is no asserted instructional error. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1535.)  That is not the case here.

Additionally, part of the reason for the civil rule is that " ' " '[i]n a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.' " ' " (*Null v. City of Los Angeles, supra,* 206 Cal.App.3d at p. 1534.)  Accordingly, without the rule, a party could "withhold a theory from the jury, by failing to request instructions, and then to obtain appellate review of the evidence and reversal of the judgment on a theory never tendered (or tendered in a different form) to the jury." (*Id*. at p. 1535.)

That concern does not arise in criminal cases, where "even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.)  Nor is that concern implicated here because neither side withheld the aiding and abetting theory. The prosecutor expressly stated that aiding and abetting was the sole theory of liability for the burglary and grand theft, which Washington's counsel acknowledged and against which she argued.

Finally, we cannot characterize aiding and abetting as " 'some other law on which the jury was not instructed.' " (*Mazik v. Geico General Ins. Co., supra,* 35 Cal.App.5th at p. 465.)  The trial court partially instructed on aiding and abetting, and the prosecutor and defense counsel filled in the gaps in their closing arguments as explained above.

Accordingly, because aiding and abetting was the People's sole theory of liability and its parameters were conveyed through trial court instruction and the attorneys' closing arguments, we will review the sufficiency of the evidence under that theory.

2.     The Evidence Supports the Verdicts

"The elements to prove grand theft are ' "the taking of personal property [valued at more than $950] from the owner . . .  into the possession of the criminal without the consent of the owner . . . [and] the asportation of the subject matter [with] the specific intent to deprive the owner of his property wholly and permanently." ' " (*People v. Portillo* (2023) 91 Cal.App.5th 577, 587.)  "The elements of burglary include entry into a building, along with the intent to commit a felony or theft." (*People v. Lujano* (2014) 229 Cal.App.4th 175, 184.)  And " 'under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another . . . if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends." ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)

By limiting his argument here to a direct perpetrator theory, Washington effectively concedes the evidence sufficiently shows he aided and abetted burglary and grand theft.  Further, from the surveillance footage and Washington's arrival and departure with Young in the stolen car where the

11

stolen items were found, the jury could reasonably infer that Washington knew Young intended to steal more than $950 of property from Lululemon and intentionally aided her in that crime. We therefore find sufficient evidence that Washington aided and abetted burglary and grand theft.

C.     *Washington's Sentence Must Be Corrected Regarding the Stayed Counts*

"[W]hen a trial court determines that section 654 applies to a particular count, the trial court must impose sentence on that count and then stay execution of that sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) Failure to do so "results in an unauthorized absence of sentence." (*Id.* at p. 1472.)

As Washington notes, the trial court improperly stayed but did not impose sentences for grand theft (count 2) and the receipt of a stolen vehicle (count 4).[3] To correct the trial court's mistake and avoid the unnecessary expense of producing Washington for a sentencing hearing that will not change his actual prison time, we exercise our authority to modify the judgment. (*People v. Alford, supra,* 180 Cal.App.4th at p. 1473.)

We impose a midterm sentence of two years for count 2 (§§ 489, subd. (c)(1); 1170, subd. (h)), doubled to four years due to the strikes (§ 667, subd. (e)(1)), and a midterm sentence of two years for count 4 (§ 496d, subd. (a)). We stay execution of the sentences in counts 2 and 4. (§ 654.)

_____

[3]     It is not clear what the trial court here intended. A court stays a sentence, not a count.

12

## IV. DISPOSITION

The judgment is modified by imposing and staying sentences on the grand theft and receiving a stolen vehicle counts as described above. The trial court shall amend the abstract of judgment accordingly and forward copies of the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

RUBIN, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

13